**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
                                )
TRESHAWN V. JONES               )
                                )
            Plaintiff,          )
                                ) Civil Action No. 11-2116(EGS)
        v.                      )
                                )
UNITED STATES OF AMERICA, et al.,)
                                )
            Defendants.         )
_____ )
```

<u>**MEMORANDUM OPINION**</u>

This case is before the Court on defendants' Motion to Dismiss or, in the alternative, for Summary Judgment.  Upon consideration of the motion, the opposition and reply thereto, the entire record, and for the reasons explained below, defendants' motion to dismiss or, in the alternative, for summary judgment is **DENIED** as to Counts I through IV of the complaint.  Defendants' motion for summary judgment is **GRANTED** as to Count V of the complaint.

**I.   BACKGROUND**

In her Complaint, plaintiff brings several claims arising from a January 28, 2009 traffic stop that occurred in the District of Columbia.  Plaintiff alleges that she was traveling near Southern Avenue and Galveston Street, S.E. with her minor child in the vehicle.  Compl. ¶ 5.  Plaintiff states that as she approached the intersection, she noticed that her sister's

fiancé, Eric Herrion, was a passenger in a vehicle that had been stopped by Officer Yeliz Kadiev, a law enforcement officer employed by the United States Park Police.  Compl. ¶ 4, 5.

Plaintiff stopped her vehicle near the intersection and exited her car.  Compl. ¶ 6.  Plaintiff states that as she got out of her car, Officer Kadiev "began yelling and screaming at the plaintiff to get back her car." *Id*.  At the same time, plaintiff's daughter ran to Mr. Herrion, who was in the passenger side of the vehicle that had been stopped.  *Id*. Plaintiff states that Officer Kadiev "became even more irate even as the plaintiff attempted to explain the situation to her." *Id*.  Plaintiff alleges that as she attempted to lead her daughter back to their car, Officer Kadiev "accosted the plaintiff, who was pregnant at the time, by pushing, manhandling and taking her to the ground." *Id*. ¶ 7.  Plaintiff further states that she was placed in handcuffs, arrested, and taken to jail.  *Id*.  Plaintiff was charged with disorderly conduct and failure to obey.  *Id*. ¶ 8.  Following a bench trial in the District of Columbia Superior Court, plaintiff was acquitted of all charges on October 7, 2009.  *Id*.

Plaintiff states that she filed a notice of claim with the United States on January 28, 2011 by filing a Standard Form 95 with the National Park Service of the Department of the

Interior.  *Id.* ¶ 9.  Plaintiff's claim was denied on May 25,
2011.  *Id*.  Plaintiff then filed this suit on November 28, 2011.

## II.  STANDARD OF REVIEW

### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure
12(b)(6) tests the legal sufficiency of a complaint.  *Browning
v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint
must contain "a short and plain statement of the claim showing
that the pleader is entitled to relief, in order to give the
defendant fair notice of what the . . . claim is and the grounds
upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
555 (2007) (internal quotation marks and citations omitted).
While detailed factual allegations are not necessary, plaintiff
must plead enough facts "to raise a right to relief above the
speculative level."  *Id.*

When ruling on a Rule 12(b)(6) motion, the Court may
consider "the facts alleged in the complaint, documents attached
as exhibits or incorporated by reference in the complaint, and
matters about which the Court may take judicial notice."
*Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).
The Court must construe the complaint liberally in plaintiff's
favor and grant plaintiff the benefit of all reasonable
inferences deriving from the complaint.  *Kowal v. MCI Commc'ns
Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  However, the Court

must not accept plaintiff's inferences that are "unsupported by the facts set out in the complaint." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Moore v. Hartman,* 571 F.3d 62, 66 (D.C. Cir. 2009). To establish a genuine issue of material fact, the nonmoving party must demonstrate—through affidavits or other competent evidence, Fed. R. Civ. P. 56(c)(1)—that the quantum of evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Steele v. Schafer,* 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson,* 477 U.S. at 248). While the Court views all facts in the light most favorable to the nonmoving party in reaching that determination, *Keyes v. District of Columbia,* 372 F.3d 434, 436 (D.C. Cir. 2004), the nonmoving party must nevertheless provide more than "a scintilla of evidence" in support of its position, *Anderson,* 477 U.S. at 252. But "[i]f material facts are at issue, or, though undisputed, are susceptible to divergent

4

inferences, summary judgment is not available." *Kuo-Yun Tao v. Freeh,* 27 F.3d 635, 638 (D.C. Cir. 1994).

## III. DISCUSSION

### A. Evidence Properly Before the Court

Rule 56 allows a party seeking or opposing summary judgment to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  Plaintiff objects on the basis of inadmissibility to several of the statements in defendants' Local Rule 56.1 statement of material facts not in dispute.  Plaintiff does not explain the basis for her objections, merely responding that "there is no admissible evidence" in the record to support several statements. Plaintiff's argument focuses on two documents: the transcript from her trial in Superior Court and the criminal incident report of her arrest.

At the summary judgment stage, a party is not required to produce evidence in a form that is admissible, but the evidence must be capable of being converted into admissible evidence at trial.  *Gleklen v. Democratic Cong. Campaign Comm., Inc.,* 199 F.3d 1365, 1369 (D.C. Cir. 2000); *see also America v. Mills,* 654 F. Supp. 2d 28, 35 (D.D.C. 2009) (finding that "if it is possible to convert evidence into a form that would be admissible at trial," the court may consider it for summary

judgment); *see Richards v. Option One Mortgage,* No. 08 Civ. 0007 (PLF), 2009 WL 2751831, at *1 n. 3 (D.D.C.2009) (explaining that hearsay statements may be converted into admissible evidence if a witness with personal knowledge can testify to them at trial). Accordingly, to the extent that the evidence cited by defendants can be converted into admissible evidence, it can be considered on summary judgment.

The nature of plaintiff's Rule 56(c)(2) objection to the admissibility of portions of the trial transcript is unclear. To the extent that plaintiff is objecting to the authenticity of the trial transcript, defendants have attached to their reply a copy of the court reporter's certification of the transcript, *see* Defs.' Reply, Ex. 8, and the Court finds that this is sufficient to establish the authenticity of the trial transcript for purposes of summary judgment. *See* Fed. R. Evid. 901 (the requirement of authentication is satisfied if the proponent produces "evidence sufficient to support a finding that the item is what the proponent claims it is"); *Mills*, 654 F. Supp. 2d at 34 (on summary judgment, the Court "need not find that the evidence is necessarily what the proponent claims, but only is that there is sufficient evidence so that the jury ultimately might do so"). If, instead, plaintiff seeks to object to the use of a transcript at trial, rather than live evidence, that argument also fails because such testimony can be "converted"

into admissible live testimony if the witness in question testifies at the trial. *See Richards*, 2009 WL 2751831, at *1 n.3. Plaintiff makes no argument that any of the Superior Court trial witnesses would be unavailable for this trial. Accordingly, the Court finds that the trial transcript is properly cited as evidence in support of summary judgment.

The Court also finds that the use of the police report is also proper under Rule 56(c)(2). Defendants have properly established the authenticity of the police report in an affidavit submitted with their Reply. *See* Defs.' Reply, Ex. 9. To the extent that plaintiff is also challenging the police record as hearsay, this argument also fails. As an initial matter, and although not argued by either party, the Court finds that the report would likely be admissible as a business record under Federal Rule of Evidence 803(6) or a public record under Rule 803(8). The Court also notes that while many of the statements contained within the police report are "out-of-court" statements, it does not appear that they are being used in this context to "prove the truth of the matter asserted." Fed. R. Evid. 801(c). Rather, the statements are being offered by the defendants to establish that certain statements were made and their effect on the listener, Officer Kadiev. *Ali v. D.C. Government*, 810 F. Supp. 2d 78, 83 (D.D.C. 2011) (rejecting Rule 56(c)(2) objection to certain statements and documents that were

offered on summary judgment for non-hearsay purposes such as the effect on the listener).  Similarly, to the extent that any of plaintiff's own statements in the report are being offered for their truth, such statements would likely also be admissible in this case as admissions by party opponent.  See Fed. R. Evid. 801(d)(2).

In view of the Court's finding that plaintiff's Rule 56(c)(2) objections fail, and because plaintiff failed to otherwise object to certain statements by citing to record evidence as required by Local Civil Rule 7(h)(1), the Court will deem the following statements to have been admitted by the plaintiff:

- The driver, identified as Bradley Cleveland, was also using a cell phone to send one or two text messages as he was stopped.  Defs.' SOF ¶ 7 (citing Tr. 27-29; Suppl. Crim. Incident Report, Block 7).

- Plaintiff, while engaged with the officer, encouraged and aided the seven-year-old passenger (Plaintiff's daughter) to approach the passenger in the Mercury (Eric Herrion), where he hugged the child, putting his arm into the coat before the child departed.  Defs.' SOF ¶ 10 (citing Tr. 26-30, 37-39, 47-48, 58-60; Suppl. Crim. Incident Report, Block 7).[1]

---

[1] Plaintiff partially disputes this statement, also citing to the trial transcript, and alleges that "[i]n fact, Mr. Herrion specifically testified that the plaintiff was handcuffed and on the ground before the child ever got out of the car."  Pl.'s SOF ¶ 10.  The Court finds that this does not create a material issue of fact.  Even if plaintiff had already been restrained, she still could have been able to tell her daughter to go to Mr. Herrion.

- Plaintiff then attempted to usher the girl from the area and the girl was driven away from the scene by her other family members who had also arrived at the scene of the stop.  Defs.' SOF ¶ 11 (citing Compl. ¶¶ 6-7; Suppl. Crim. Incident Report, Block 7).

- Officer Kadiev detected the strong odor of marijuana as Mr. Herrion was removed from the Mercury and she located a small piece of green plant material consistent with marijuana on the passenger-side floor of the Mercury. Defs.' SOF ¶ 12 (citing Suppl. Crim. Incident Report, Block 7).

- Officer Kadiev also took the cell phone from Mr. Cleveland and observed that one of the text messages read "Southern Ave. I'm dirty."  Defs.' SOF ¶ 13 (citing Suppl. Crim. Incident Report, Block 7).

**B. Counts I through IV**

Plaintiff brings four claims against the United States: Count I (False Arrest/False Imprisonment); Count II (Intentional Infliction of Emotional Distress); Count III (Assault & Battery); and Count IV (Malicious Prosecution).  Defendants argue that the claims against the United States are untimely because they were not filed in this Court within the requisite time period set forth by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq.  Defs.' Mot. at 21.  The parties do not dispute that the FTCA applies to this case.  *See* Pl.'s Opp. at 15.

The FTCA "requires that claims be presented to the agency in question within two years of accrual, and filed in court within six months after denial by the agency." *Mittleman v. United States*, 104 F.3d 410, 413 (citing 28 U.S.C. § 2401(b)).

9

Specifically, the six month limit runs from the "date of mailing, by certified or registered mail, of the notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).  Defendants argue that because plaintiff alleges that her claim was "denied by letter on May 25, 2011," plaintiff was required to file her complaint by November 25, 2011.  Because the complaint was not filed until November 28, 2011, defendants argue that plaintiff's claims against the United States are untimely.

A defendant bears the burden of proving that an action is untimely and, once the defendant satisfies that burden, the burden shifts to the plaintiff to assert that equitable principles justify avoidance of the defense.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  By citing to the only date set forth in plaintiff's complaint regarding the letter, May 25, 2011, defendant has carried its burden of establishing that plaintiff's claim is untimely.  The Court finds, therefore, that the burden shifts to the plaintiff to establish that the complaint was timely filed.

Plaintiff argues that she was permitted to file her complaint on November 28, 2011 because the Clerk's Office was inaccessible on November 25, 2011, the day after Thanksgiving, as a result of an administrative order by the Chief Judge closing the United States District Court for the District of

Columbia, including the Clerk's Office.  Defendants do not

dispute that an order was issued, but disagree as to its effect.

Federal Rule of Civil Procedure 6(a)(3) provides that

> "Unless the court orders otherwise, if the clerk's
> office is inaccessible:
> (A)  on the last day for filing under Rule 6(a)(1),
> then the time for filing is extended to the first
> accessible day that is not a Saturday, Sunday, or
> legal holiday; . . . .

Fed. R. Civ. P. 6(a)(3).  Plaintiff argues that because the

Clerk's Office was closed on November 25, 2011 as a result of

the Chief Judge's order, the Clerk's Office was "inaccessible"

and plaintiff was permitted to file her complaint on the

following Monday, November 28, 2011.

Defendant argues that plaintiff misunderstands the meaning

of "inaccessible" in Rule 6(a)(3).  Defendant argues that even

if the Court was in recess, the Clerk's Office has an after-

hours depository that was open to accept filings.[2]  Defendant

argues that in this context, "inaccessible" refers to instances

of inclement weather and not simply the closing of the Court for

other reasons.  Defendant argues that the mere "closing" of the

Court, as opposed to, for example, a presidential executive

---

[2] The Court notes that defendants have provided no evidence in
support of the statement that the 24-hour drop box remained open
on November 25, 2011, stating only without any citation that
they have "verified" with the Clerk's Office that "even if the
Court was in recess on the Friday after Thanksgiving, the Court
was open to accept filings in an after-hours depository."

order designating November 25, 2011 as a "holiday" bars plaintiff from arguing that her complaint was timely filed.

In a case not cited by either party, this Circuit expressly rejected the argument that the Clerk's Office was not "inaccessible" on a day that the office was closed because filings could still theoretically have been made in the 24-hour drop box. *See Tel. and Data Sys., Inc. v. Amcell F Atlantic City, Inc.*, 20 F.3d 501, 501 (D.C. Cir. 1994).[3] In that case, the Clerk's Office and the Court had been closed due to inclement weather. The Circuit found that the argument regarding the drop box to be "plainly inconsistent" with the "considerations of liberality and leniency which find expression in Rule 6(a)." *Id.* (citing *Union Nat. Bank v. Lamb*, 337 U.S. 38, 41 (1949); *accord Keyser v. Sacramento City Unified School Dist.*, 265 F.3d 741, 747 (9th Cir. 2001) (holding that regardless of whether the day after Thanksgiving was a legal holiday, "the fact that the Clerk's office was closed was sufficient to make it 'inaccessible'" under Federal Rule of Appellate Procedure 26(a)(3), which is identical to Federal Rule of Civil Procedure 26(a)(3)). Similarly, the Court finds that the fact that the Clerk's Office was closed on November 25, 2011 pursuant to the Chief Judge's order is sufficient to render it

---

[3] The Court is troubled by the parties' failure to cite this case, which is Circuit precedent that is binding upon this Court.

"inaccessible" under Rule 6(a).  Accordingly, plaintiff's

complaint was timely filed on November 28, 2011, the next day

that the Clerk's Office was open.  Because defendants have

offered no other basis for dismissing Counts I through IV,

defendants' motion to dismiss or, in the alternative, for

summary judgment, is **DENIED**.[4]

### C. Count V

In Count V of the Complaint, titled "Deprivation of Civil

Rights, 42 U.S.C. § 1983," plaintiff alleges that Officer Kadiev

violated her Fourth Amendment rights to be free of unreasonable

seizure in the form of unlawful arrest and malicious

prosecution,[5] and by Officer Kadiev's use of excessive force.

Compl. ¶¶ 23-26.

---

[4] Because the Court has found that plaintiff's complaint was
timely filed on November 28, 2011, the Court does not reach
plaintiff's alternative argument regarding the difference
between the date of the letter versus the actual date the letter
was mailed.  Neither party argued that the letter was mailed
before May 25, 2011, rendering the date of mailing moot for
purposes of this motion.

[5] Neither party focuses on plaintiff's related allegation of
malicious prosecution, also included in Count V.  Because
plaintiff did not raise that issue in opposition to defendants'
motion for summary judgment on Count V, the Court will deem the
issue conceded.  *See Hopkins v. Women's Div., Gen. Bd. of Global
Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well
understood in this Circuit that when a plaintiff files an
opposition to a dispositive motion and addresses only certain
arguments raise by the defendant, a court may treat those
arguments that the plaintiff failed to address as conceded.")
(citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1987)).

1. <u>Section 1983 is Inapplicable</u>

As an initial matter, and as argued by the defendants, this claim suffers from a fatal flaw.  Specifically, Section 1983 claims can only arise from actions taken under color of state law.  *See, e.g.*, *Abramson v. Bennett*, 707 F. Supp. 13, 16 (D.D.C. 1989), *aff'd* 809 F.2d 291 (D.C. Cir. 1989).  Because Officer Kadiev was a member of the United States Park Police, she is a federal employee, and plaintiff cannot state a claim against Officer Kadiev under Section 1983.

In her opposition, plaintiff concedes that Section 1983 is "not applicable to this case."  Pl.'s Opp. at 9.  Plaintiff argues, however, that the Court is "not bound by plaintiff's characterization of the action" and that Officer Kadiev "can be held responsible for her constitutional torts consistent with *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)."  *Id.* Plaintiff argues that Count V states a claim for a violation of the Fourth Amendment due to unlawful seizure and excessive force, and that those claims are actionable under *Bivens*. Because the Court is required to construe plaintiff's claims in the light most favorable to her, *see Anderson*, 477 U.S. at 255 and *Kowal*, 16 F.3d at 1276, the Court will construe Count V of plaintiff's complaint as arising under *Bivens*, rather than Section 1983.

2. Qualified Immunity

Officer Kadiev asserts the defense of qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  Since the immunity exists to shield properly-acting government officials from suit, it should be granted or denied at the earliest possible stage in the litigation.  *Id*.  It is therefore appropriate to rule on the issue of immunity on a properly supported motion for summary judgment.  *Butz v. Economou*, 438 U.S. 478, 508 (1978).  Because the Court finds that there is no genuine dispute of material fact in this case, summary judgment is the appropriate forum to resolve a qualified immunity defense.  *See Seigert v. Gilley*, 500 U.S. 226, 231.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).  Defendants are entitled to qualified immunity unless the plaintiffs alleged (1)

15

a violation of a constitutional right that (2) was "clearly
established" at the time of violation.  *Saucier v. Katz,* 533
U.S. 194, 201 (2001), *limited on other grounds by Pearson v.
Callahan*, 555 U.S. 223 (2009).  In other words, "existing
precedent must have placed the statutory or constitutional
question beyond debate."  *Reichle v. Howards*, 132 S. Ct. 2088,
2093 (2012).  Courts may "exercise their sound discretion in
deciding which of the two prongs of the qualified immunity
analysis should be addressed first in light of the circumstances
in the particular case at hand."  *Pearson v. Callahan,* 555 U.S.
223, 236 (2009).  In determining whether the legal rules at
issue are clearly established, a court must look to "cases of
controlling authority in [its] jurisdiction."  *Wilson v. Layne*,
526 U.S. 603, 617 (1999).  If there is no such controlling
authority, then the Court must determine whether there is "a
consensus of cases of persuasive authority."  *Id.*  Once a
defendant asserts a defense of qualified immunity, the burden
then falls to the plaintiff to show that the official is not
entitled to qualified immunity.  *Winder v. Erste*, --- F. Supp.
2d ----, 2012 WL 5863494, at *5 (D.D.C. Nov. 19, 2012).

Accordingly, the inquiry here is not whether Officer
Kadiev's conduct violated plaintiff's Fourth Amendment rights.
Rather, the dispositive question is whether, given the
circumstances presented, a reasonable police officer would have

known that her conduct violated plaintiff's clearly established
Fourth Amendment rights.

### a. Officer Kadiev Is Entitled to Qualified Immunity With Respect to the Restraining and Handcuffing of Plaintiff

As discussed above, Officer Kadiev is entitled to qualified
immunity if a reasonable officer could believe that her actions
were lawful, in light of clearly established law and the
information the officer possessed.  As the Supreme Court has
explained, "[n]ot every push or shove, even if it may later seem
unnecessary in the peace of a judge's chambers," violates the
Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Defendants argue that under clearly established law,
Officer Kadiev was entitled to restrain a person involving
herself in a potential crime scene.  Defs.' Mot. at 20-21;
Defs.' Reply at 7 (citing, *e.g.*, *Muehler v. Mena*, 544 U.S. 93,
98-99 (2005); *United States v. Jones*, 973 F.2d 928, 931 (D.C.
Cir. 1992) *vacated in part on other grounds* 997 F.2d 1475 (D.C.
Cir. 1993)).  In *Muehler*, the Supreme Court held that the
detention of an occupant of a home during the execution of a
search warrant was justified to minimize the risk of harm to
officers and other occupants.  The Court held that the use of
handcuffs to detain the occupant to effectuate the detention was
reasonable because the governmental interests in safety
outweighed the intrusion on the occupant, and denied the

17

occupant's Section 1983 claim.  Similarly, in *Jones*, this Circuit held that the subject of an investigative *Terry* stop may be ordered to the ground, handcuffed, and transferred to a police car without the stop becoming an unlawful seizure or an arrest, so long as the conduct was reasonable.  Where the suspect had not obeyed police orders and had tried to flee, law enforcement's conduct in detaining him did not violate his Fourth Amendment rights.  The other case law cited by defendants also supports the right of law enforcement to use reasonable force to detain a person in the appropriate circumstances.  *See United States v. Wilson*, 36 F.3d 127, 1994 WL 408264 (D.C. Cir. 1994) (*Terry* stop and subsequent tackling of suspect was warranted when he dropped his only piece of luggage in train station and tried to flee after officers introduced themselves to him); *United States v. Vaughn*, 22 F.3d 1185, 1994 WL 119002 (D.C. Cir. 1994) (when subject of *Terry* stop quickly thrust his hand into pocket upon seeing police approaching, and did not remove his hand upon request, it was reasonable for officer to use force to remove his hand from his pocket); *see also United States v. Laing*, 889, F.2d 281, 285 (D.C. Cir. 1989) (the "force used to carry out the stop and search must be reasonable, but may include using handcuffs or forcing the detainee to lie down to prevent flight").

Plaintiff makes no effort to distinguish the case law cited by defendants.  In response to defendants' arguments, plaintiff simply argues that "force without reason is unreasonable" and cites several cases that are not on point.  *See* Pl.'s Opp at 15 (citing *Johnson v. District of Columbia*, 528 F.3d 969, 976-77 (D.C. Cir. 2008); *DeGraff v. District of Columbia*, 120 F.3d 298, 302 (D.D.C. 1997)).  In *Johnson*, this Circuit held that an issue of fact existed as to whether a man lying on his stomach was "threatening or suggested escape" such that the use of force, in the form of repeated kicking of the man in the stomach, was warranted by officers.  528 F.3d at 977.  In that case, however, the Circuit also stated that an officer's act of violence violates the Fourth Amendment if it furthers no governmental interest such as apprehending a suspect or protecting an officer or the public, and noted that the officers' safety did not appear to be in issue in that case.  *Id*. at 976.  In *DeGraff*, the Court found that there was an issue of fact as to whether the act of carrying a DUI suspect and handcuffing her to a mailbox constituted excessive force because, unlike in other cases, there was no evidence that the suspect was evasive, attempting to escape, or jeopardizing the safety of the officers.  120 F.3d at 302.

Here, the undisputed facts show that Officer Kadiev was dealing with a traffic stop that was spiraling rather quickly

out of control.[6]  Plaintiff admits that she got out of her car
and approached a late-night traffic stop in progress.
Plaintiff's daughter, at the direction of the plaintiff, ran to
the passenger in the car, Mr. Herrion, who put his arm in the
child's coat.  Plaintiff then attempted to usher the child away
from the stop and the child was driven away from the scene by
other family members who had also arrived at the scene of the

---

[6] Plaintiff also attempts to create an issue of fact in response
to defendant's arguments.  Citing her trial testimony, plaintiff
argues that the testimony "refutes any contention" that Officer
Kadiev was justified in handcuffing plaintiff.  The Court
disagrees.  As an initial matter, plaintiff's trial testimony
was not properly cited in her statement of facts and is not
properly considered on summary judgment.  See Fed. R. Evid.
56(c)(1)(A); Local Civ. R. 7(h)(1) (requiring that a motion for
summary judgment be "accompanied by a separate concise statement
of genuine issues setting forth all material facts as to which
it is contended there exists a genuine issue necessary to be
litigated").  Plaintiff also does not specifically explain how
her proffered trial testimony refutes any relevant facts.  Upon
the Court's review of the testimony, it appears that plaintiff
testified at her trial that she heard that her brother had been
pulled over and that she traveled to the location where they
were stopped and involved herself in the traffic stop.  Pl.'s
Opp. at 12.  Plaintiff testified that she tried to go back to
her car and told Officer Kadiev that she would wait at the
corner but was told to come back by Officer Kadiev, who then
handcuffed her and arrested her.  Even if the testimony that
plaintiff tried to return to her car were properly considered by
the Court, it does not raise an issue of fact as to the
reasonableness of Officer Kadiev's conduct.  Assuming plaintiff
did attempt to return to her car, there was no guarantee that
she would stay there, in view of her prior conduct.  In light of
all of the surrounding circumstances, including the conduct of
plaintiff, the actions of plaintiff's daughter, and the growing
crowd of family members at the traffic stop, Officer Kadiev
could have believed it was reasonable to handcuff plaintiff at
that time for her safety and the safety of others.

accident.  At that point, it seems that a small crowd of plaintiff's friends and family were at the scene of the accident, with only one officer.  Officer Kadiev stated in her report that she detected a strong odor of marijuana in Mr. Cleveland's car and found a small amount of marijuana in the car.  She also stated that during the stop, Mr. Cleveland sent text messages, one of which read "Southern Ave. I'm dirty."

The Court finds that the facts in this case establish that a reasonable officer could have believed that her actions were lawful and reasonable under the circumstances.  The facts are distinguishable from *Johnson* and *DeGraff*, in which an officer's safety and the safety of the public was not at issue.  In the circumstances described above, a reasonable officer could have believed that her safety or the safety of others was at risk.[7] The Court finds that Officer Kadiev's conduct therefore did not violate a clearly established constitutional right in restraining and handcuffing plaintiff, and that she is entitled to qualified immunity.

---

[7] Plaintiff notes in her statement of facts that "Defendant Kadiev was alone in a vehicle because she chose to stop the vehicle which contained two men while she was alone."  Pl.'s SOF ¶ 6.  Plaintiff's point in making this statement is unclear but to the extent that plaintiff suggests that Officer Kadiev cannot rely on the defense of qualified immunity or that the stop was otherwise improper because she "chose" to pull over two men at night, the Court finds the argument particularly unpersuasive.

### b. Officer Kadiev Is Entitled to Qualified Immunity With Respect to Plaintiff's Arrest

Plaintiff also argues that her arrest violated her Fourth Amendment to be free of unlawful seizure and unlawful arrest. The key question is whether, at the time of the detention, a reasonable officer would have known that under clearly established law there was no probable cause to arrest plaintiff. "An officer retains qualified immunity from suit if he had an objectively reasonable basis for believing that the facts and circumstances surrounding the arrest were sufficient to establish probable cause." *Wardlaw v. Pickett,* 1 F.3d 1297, 1304 (D.C. Cir. 1993), citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Thus, even if there was not sufficient probable cause, a defendant will still be immune from suit if reasonable officers in their positions "could have believed that probable cause existed to arrest [plaintiff]." *Hunter v. Bryant,* 502 U.S. 224, 228-29 (1991). As the Supreme Court has made clear, the officer's actual state of mind is irrelevant to the existence of probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Rather, the officer's subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. *Id*. "The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the

22

officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Whren v. United States*, 517 U.S. 806, 813 (1996) (citations omitted).

Defendants argue that a reasonable officer could have believed that there existed probable cause to arrest plaintiff for her possible involvement in a number of criminal offenses under the D.C. Code.  Defs.' Reply (citing D.C. Code ¶¶ 48-904.01 (possession with intent to distribute a controlled substance); 48-904.07 (enlistment of minors to distribute a controlled substance); 22-405(b)(resisting, impeding or interfering with a law enforcement officer engaged in the performance of official duties); 21 U.S.C. § 841(a) (possession with intent to distribute a controlled substance)).

Plaintiff again relies on her trial testimony and argues that the testimony "refutes any contention" that Officer Kadiev had probable cause to arrest her.  As stated above, the Court is under no obligation to consider the trial testimony proffered by plaintiff, as it was not properly cited in her statement of facts.  Again, however, the Court finds that the issue of whether plaintiff attempted to return to her car on her own accord does not create a genuine issue of material fact that precludes summary judgment.  Rather, the undisputed facts demonstrate that Officer Kadiev was in the midst of a quickly

unraveling situation involving suspected drug use and possession and the possible involvement of a minor in those crimes. Plaintiff's actions in approaching the stop and involving her daughter in the stop were sufficient to lead a reasonable officer to believe that plaintiff had committed a crime, possibly one involving a minor, and a reasonable officer could have believed she had probable cause to arrest plaintiff. Accordingly, the Court finds that Officer Kadiev is entitled to qualified immunity as to Count V of the complaint.[8]

### IV.   CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss or, in the alternative, for summary judgment is **DENIED** as to Counts I through IV of the complaint.  Defendants' motion for summary judgment is **GRANTED** as to Count V of the complaint. An appropriate Order accompanies this Memorandum Opinion.


**Signed:**   **Emmet G. Sullivan**
          **United States District Judge**
          **March 31, 2013**

---

[8] Because the Court grants summary judgment as to Count V, the Court does not reach defendants' argument that Officer Kadiev was not properly served.